J9AQgasS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     UNITED STATES OF AMERICA
3
                    v.                          18 CR 252 (LAK)
4                                               Sentence

5    THOMAS GASSNOLA

6                    Defendant
     ------------------------------x
7
                                                New York, N.Y.
8                                               September 10, 2019
                                                3:30 p.m.
9

10   Before:

11                      HON. LEWIS A. KAPLAN
                                                District Judge
12

13                           APPEARANCES

14   GEOFFREY S. BERMAN
          United States Attorney for the
15        Southern District of New York
     ELI J. MARK
16   EDWARD DISKANT
     ALINE R. FLODR
17        Assistant United States Attorneys

18   DANIEL D. KELLY
          Attorney for Defendant
19

20

21

22

23

24

25

J9AQgasS

1              (Case called)

2              DEPUTY CLERK:  Government, are you ready?

3              MR. MARK:  Yes, Ely Mark, Edward Diskant and Aline

4    Flodr for the government.  Good afternoon.

5              THE COURT:  Good afternoon.

6              DEPUTY CLERK:  Defendant, are you ready?

7              MR. KELLY:  Yes.  Daniel Kelly for the defendant.

8    Good afternoon.

9              THE COURT:  Good afternoon.

10             Mr. Kelly, have you and Mr. Gassnola had the

11   presentence report for the necessary period?

12             MR. KELLY:  Yes, your Honor.

13             THE COURT:  Mr. Gassnola, have you read the

14   presentence report and consulted with your lawyer about it?

15             THE DEFENDANT:  I have, your Honor.

16             THE COURT:  It will be sealed and made available to

17   counsel in the event of an appeal.  You may be seated.  Are

18   there any unresolved objections to the presentence report?

19             MR. MARK:  No, your Honor.

20             MR. KELLY:  No, your Honor.

21             THE COURT:  I adopt the presentence report and the

22   guideline computation and range it contains.

23             I understand the government has a motion.

24             MR. MARK:  Yes, your Honor.  We have a motion for the

25   defendant to be sentenced in light of the Section 5K1.1 factors

J9AQgasS

1    under the United States Sentencing Guidelines.

2              THE COURT:  Granted.

3              I've received in relation to the sentencing the

4    presentence report a letter from the government dated

5    August 27, a letter on behalf of Mr. Gassnola with various

6    attachments from Mr. Kelly which was filed September 3, and I

7    have proposed orders of restitution.

8              Is there anything else of which I should be aware?

9              MR. MARK:  No, your Honor.

10             MR. KELLY:  No, your Honor.

11             THE COURT:  Then I will hear you, Mr. Kelly.

12             MR. KELLY:  Thank you, your Honor.  Good afternoon

13   again.

14             Your Honor, with respect to Mr. Gassnola, I just want

15   to highlight a few things in the letters, the attachments to my

16   submission, that I think describe Mr. Gassnola perhaps more

17   articulately than anyone could.  These are acts that

18   Mr. Gassnola took with respect to mentoring young men in a

19   basketball program he started in Worcester, Massachusetts some

20   time ago.  Some of these acts, your Honor, date back the better

21   part of a decade, eight, ten years ago.  I think there's a

22   common theme in a lot of these submissions by these young men

23   and by their parents in that Mr. Gassnola was not just a

24   basketball coach.  He took the role of coach, and viewed it as

25   a much larger role.  He viewed it as the role of a mentor.  He

J9AQgasS

1  viewed it as a role of a strong adult male voice in the lives

2  of young men that oftentimes did not have such an voice.

3  Mr. Gassnola, as the Court may know from the presentence

4  investigation report, did not have such a voice in his young

5  life, which caused him some trouble early on, your Honor.

6          The submissions also detail what he's done for them

7  outside of basketball.  I think it's important to note that

8  these young men in particular -- I am going to quote from a

9  couple -- detail what Mr. Gassnola did for them, regardless of

10  their role on the team.  In particular was a young man who was

11  at Williams College in Massachusetts, who stated that when he

12  first started on Mr. Gassnola's team, he was considered a

13  stand-out player.  Shortly thereafter, the second year he

14  became much more of a supporting role player, and as is common

15  in AAU basketball when a coach tells you you're not going to

16  play that much, you find another coach that tells you

17  differently.  This young man did not.  And he went on to

18  describe the relationship that he had with Mr. Gassnola was the

19  strong reason why he did not.  Mr. Gassnola's mentorship and

20  standing outside of his role as a coach had nothing do with the

21  success of this young man on the team, whether he was a

22  starting player or whether he was the last player off the

23  bench.  Mr. Gassnola's mentorship continued throughout the

24  course of that young man's adult life.

25          There's another submission by a young man why plays at

J9AQgasS

1   I believe the University of Notre Dame who stated that Mr.

2   Gassnola's common theme when speaking with young players was

3   that "I'm going to be with you for the rest of your life,

4   whether you play basketball or not."

5              There was another young man going through a tough time

6   at age 15.  This young man is 23 years old now.  At age 15, one

7   of his childhood memories seared into his memory was that of

8   being kicked out of his home.  He had no place to go.  His

9   parents asked him to leave his home.  The first person he

10  turned to, Mr. Gassnola.  Mr. Gassnola is still in that young

11  man's life, who is 23 years old.

12             Mr. Gassnola went to parent-teacher conferences for

13  individuals who did not have fathers to do that.  Mr. Gassnola

14  was there at all of these life events and has continually kept

15  up the communication throughout the course of these young men's

16  lives.  This predates any of the activity in this case and

17  certainly predates any idea that Mr. Gassnola would find

18  himself on your Honor's doorstep this afternoon.

19             He is a young man who has taken significant steps in

20  this case as well, your Honor.  The conduct is well-known.  But

21  I just want to point out a couple of things.  He began

22  cooperating with the government from the very first contact.

23  He pled guilty early on before he was even -- to an information

24  without having to be indicted.  This is someone who gave

25  information to the government throughout the course of the year

J9AQgasS

1   that he was involved that they may not have already have

2   uncovered.

3           So, your Honor, we're here asking for a probationary

4   sentence.  We're also asking that to the extent that travel

5   restrictions can be the least prohibitive possible,

6   Mr. Gassnola is employed with a company outside of

7   Massachusetts.  His employment also means that he has to travel

8   to other states other than that.  He finds himself frequently

9   traveling for business.  So we'd ask the Court to consider if

10  the Court was to place him on probation or supervised release

11  that he have the least restrictive travel restrictions

12  possible.

13          For all those reasons, your Honor, we're asking that

14  the defendant be sentenced to probation.  Thank you.

15          THE COURT:  Thank you.

16          Mr. Gassnola, is there anything you'd like to say?

17  You have the right to speak.

18          THE DEFENDANT:  I just want to say that I'm sorry for

19  any harm that I've caused in this matter, especially to my

20  family.  It's been a long two years.  My family is everything

21  to me, and I just want to move on, and try to re-build what I

22  had for many years and try to get back on track.  Again, I'm

23  sorry for any harm I've caused in this matter.  That's it, your

24  Honor.

25          THE COURT:  All right, thank you.

J9AQgasS

1          Mr. Mark.

2          MR. MARK:  Just very briefly, your Honor.  Our letter

3   is quite detailed, and your Honor has seen Mr. Gassnola

4   testify.  Two points I think particularly bear mention, which

5   Mr. Kelly touched on, obviously is in our letter.  One was the

6   defendant's prompt acceptance of responsibility in this case,

7   and two the nature and importance of his cooperation.

8          First as his to prompt acceptance, it was immediate.

9   His acknowledgment of wrongdoing was complete.  He started

10  proffering with the government soon after retaining Mr. Kelly

11  and after being approached by FBI agents.  He was never charged

12  initially.  And he ultimately was the first defendant in these

13  related cases to plead guilty, and he pled guilty to both

14  conduct that the government knew about at the time he was first

15  approached, as well as conduct that the government only learned

16  about because of his cooperation.  The defendant spoke and

17  talked about many payments to other families of student

18  athletes that the government didn't know about at that time and

19  obviously drove up the defendant's exposure under the

20  Sentencing Guidelines.

21         The fact that he spoke about and met with us about

22  conduct that we didn't know about at the time turns into the

23  second point, which is the nature and importance of that

24  cooperation.  Through these proffer sessions, the government

25  learned about additional payments that were the basis for a

J9AQgasS

1    superseding indictment that was filed in the Gatto matter which

2    reflected that the conduct in the initial complaint in the

3    indictment was more pervasive, more extreme and existed over a

4    period of years which was very important in shining a further

5    light on the conduct that happened at Adidas during those

6    periods of years.

7          And obviously his cooperation was important not just

8    in obtaining that superseding indictment, but he testified at

9    trial.  He testified for three days, and it was a very

10   difficult testimony, obviously, because one of the defendants

11   in that case was a very good friend of his, James Gatto.

12   Nonetheless, he came in and understood that from the get-go he

13   would have to cooperate, and he'd have to cooperate fully, and

14   he took that responsibility on.  And I think both of those

15   points are very important for the Court to consider in

16   determining a just sentence.  Thank you.

17         THE COURT:  Thank you.

18         Mr. Gassnola, please rise for the imposition of

19   sentence.

20         (Complies)

21         THE COURT:  It is the judgment of this Court that you

22   be committed to the custody of the Attorney General of the

23   United States or his designee for a term of imprisonment of

24   time served; that you are thereafter to serve a term of

25   supervised release of one year; and that you pay the mandatory

J9AQgasS

special assessment of $100.  You shall also pay restitution in
the aggregate amount of $342,437.75 to the payees and in the
respective amounts and on the terms set forth in an order of
restitution that I will sign in a few minutes.

         The term of supervised release will be subject to the
standard conditions of supervision 1 through 12, and the
following special conditions:

         First, you must provide the probation officer with
access to any requested financial information.

         Second, you must not incur new credit charges or open
additional lines of credit without the approval of the
probation officer.

         And, third, you shall serve a term of home detention
of two months commencing on a date set by the probation
officer.  While you're on home detention, you may leave only
for employment that is known to the probation officer, medical
care, and any other activities approved in advance by the
probation officer.  You shall also comply if directed by the
probation officer with electronic monitoring conditions.

         I advise you that to whatever extent you haven't
waived it, you have the right to appeal from the judgment
imposing this sentence.  If you wish to appeal, you must file a
written notice of appeal no later than 14 days after the date
on which judgment is entered, which could be as soon as today.
That notice of appeal has to be filed with the Clerk of the

J9AQgasS

1    district court.

2            If you wish to appeal and you can't afford to pay the

3    fees necessary to do so, you have the right to apply for

4    percentages to appeal as a poor person.  If that application

5    were granted, you'd be permitted to appeal without payment of

6    the fees.  And if you couldn't afford a lawyer, a lawyer would

7    be appointed for you at public expense.

8            You may be seated.

9            Now, counsel, I assume you've all seen the proposed

10   form of the order of restitution, right?

11           MR. MARK:  Yes, your Honor.

12           MR. KELLY:  Yes, your Honor.

13           THE COURT:  Any objection to it, Mr. Kelly?

14           MR. KELLY:  No, your Honor.

15           THE COURT:  Obviously, the sentence reflects the

16   considerable value of Mr. Gassnola's cooperation with the

17   government which was essential, or nearly so anyway, to making

18   this case, and served a real public interest.

19           I should also add that the mandatory drug testing

20   condition is suspended.  I see no reason to believe there is

21   any risk of drug abuse.

22           Anything else we need to cover, folks?

23           MR. KELLY:  Not from our side, your Honor.

24           MR. MARK:  No, your Honor.

25           THE COURT:  OK.  Thank you.    (Adjourned)